Argued and submitted November 14, 1984, affirmed January 23, reconsideration
denied April 5, petition for review denied May 7, reconsideration of denial allowed,
previous order withdrawn, petition for review allowed June 25, 1985 (299 Or 313)
See 300 Or 139 (1985)

WRIGHT et al,
*Appellants,*

*v.*

KECH-TV et al,
*Respondents.*

(133,264; CA A28750)

694 P2d 545

Jossi Davidson, Silverton, argued the cause and filed the briefs for appellants.

Michael Duane Brown, Salem, argued the cause for respondents KECH-TV, Greater Willamette Vision, Ltd., Roger Loe, and Willamette Subscription Television, Ltd.

No appearance for respondent ABCD...Vision, Inc.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs brought this action to compel the removal of defendant KECH-TV's transmission tower from land in an exclusive farm use zone. The trial court granted defendants' motion to dismiss on the ground that the Land Use Board of Appeals has exclusive subject matter jurisdiction over the questions presented in the action. Plaintiffs appeal, and we affirm.

Defendants installed the tower and related facilities in October, 1981, after receiving the necessary permits from Marion County. The county did not conduct quasi-judicial proceedings in connection with its issuance of the permits, because it regarded the use as a permitted one in the zone and it therefore believed quasi-judicial procedures to be unnecessary. This action was initiated in April, 1982, and it was dismissed in June, 1983.[1]

■ Plaintiffs' first argument on appeal is that they were entitled to invoke the court's jurisdiction rather than LUBA's, because the relief they seek is "the removal of an unlawful structure" and LUBA cannot provide that remedy. Plaintiffs encase their argument in constitutional and other elaborately stated trappings, none of which succeeds in detracting from the argument's underlying simplicity or from the simplicity of the answer. The legislature can and has conferred jurisdiction on LUBA rather than the courts to review land use decisions, and the fact that plaintiffs desire relief that is beyond LUBA's remedial authority does not give plaintiffs the right to seek circuit court review of the county's land use decision. Whether plaintiffs could have sought judicial remedies *if* they had first pursued a successful appeal to LUBA is a question we need not decide, because plaintiffs did not follow that route. *See* ORS 215.185.[2]

---

[1] In April, *1983*, plaintiffs appealed to LUBA from the county's 1981 decision to issue the permits. LUBA dismissed the appeal as untimely, and we affirmed the dismissal. *McCoy v. Marion County,* 69 Or App 522, 686 P2d 1059, *rev den* 298 Or 334 (1984).

[2] ORS 197.825 was enacted through Oregon Laws 1983, chapter 827, section 30, and took effect after this action was dismissed. Subsection (1) of that statute reenacts the earlier statutory conferral on LUBA of exclusive jurisdiction to review land use decisions. Subsection (4) of the statute provides:

"Notwithstanding subsection (1) of this section, the circuit courts of this

■ Plaintiffs argue that ORS 215.185(1) authorizes this action. It provides in relevant part:

> "In case a building or other structure is, or is proposed to be, located, constructed, maintained, repaired, altered, or used, or any land is, or is proposed to be, used, in violation of an ordinance or regulation designed to implement a comprehensive plan, the governing body of the county or a person whose interest in real property in the county is or may be affected by the violation, may, in addition to other remedies provided by law, institute injunction, mandamus, abatement, or other appropriate proceedings to prevent, temporarily or permanently enjoin, abate, or remove the unlawful location, construction, maintenance, repair, alteration, or use. * * *"

The parties argue at length in their briefs about the relationship between ORS 215.185 and the statutory scheme governing LUBA's review of land use decisions. Neither party cites *Mehring v. Arpke,* 65 Or App 747, 672 P2d 382 (1983), *rev den* 296 Or 411 (1984), where we decided that issue. We stated:

> "We cannot agree with plaintiffs' contention that ORS 215.185 provides a judicial remedy for a proposed violation of a comprehensive plan and zoning ordinance in a case where defendants' actions are taken in accordance with a 'land use decision' by a local government." 65 Or App at 751.[3]

■ Plaintiffs argue next that the county was required to, but did not, follow quasi-judicial procedures in considering the permit applications and that, as a result, "LUBA cannot act in this case because there is no record" and "only a court can proceed in those circumstances." Plaintiffs are incorrect. LUBA had authority under Oregon Laws 1979, chapter 772, section 5(4)(a), *as amended by* Oregon Laws 1981, chapter 748, (section 5),[4] to reverse or remand a land use decision if the

state retain jurisdiction:

"(a) To grant declaratory, injunctive or mandatory relief in proceedings arising from decisions described in ORS 197.015(10)(b) or proceedings brought to enforce the provisions of an adopted comprehensive plan or land use regulations; and

"(b) To enforce orders of [LUBA] in appropriate proceedings brought by [LUBA] or a party to the [LUBA] proceeding resulting in the order."

[3] Plaintiffs also rely on ORS 197.825(4), quoted in note 2, *supra.* That statute was enacted after this action was brought and after it was dismissed by the trial court. It is therefore unnecessary for us to construe the statute here.

[4] Section 5 was repealed by Oregon Laws 1983, chapter 827, section 59, and has been replaced by the materially similar provisions of ORS 197.835(8).

local governing body "[f]ailed to follow the procedure applicable to the matter before it" or "[m]ade a decision that was not supported by substantial evidence in the whole record."

■ For essentially the same reason, plaintiffs' argument concerning the constitutionality of the county ordinance under which the permits were granted has no bearing on whether the court rather than LUBA had subject matter jurisdiction. Assuming that the court would have had jurisdiction if LUBA lacked the authority to decide the constitutional question, LUBA *did* have that authority.

■ Plaintiffs *appear* to suggest that, because quasi-judicial procedures and the development of a record were required, the county's failure to meet those requirements means that it made *no* land use decision at all and that there was, therefore, nothing over which LUBA could exercise jurisdiction. Whether that point is one plaintiffs intended to make or is one we mistakenly discern in their argument, it is specious. If plaintiffs were correct in their contention that the county did not meet applicable requirements in making its decision, that would mean only that the county erred in connection with the decision; it would not mean that it made no decision. For the reasons we have discussed, any such error was corrigible through an appeal to LUBA.

■ Plaintiffs' final argument is that "LUBA HAS NO JURISDICTION—IT IS UNCONSTITUTIONAL." The basic point plaintiffs make to support that argument is that LUBA is a nonjudicial body that performs judicial functions and that its existence violates the separation of powers requirements of Article III, section 1, and Article VII (Amended), section 1, of the Oregon Constitution. Plaintiffs acknowledge that we addressed and rejected the same argument in *Baxter v. Monmouth City Council,* 51 Or App 853, 627 P2d 500, *rev den* 291 Or 368 (1981); *see also Bryant v. Clackamas County,* 56 Or App 442, 445, 643 P2d 649 (1982). However, plaintiffs contend that the issue should not have been reached in *Baxter,* that our discussion of it there was *dictum* and that:

> "Although LUBA has been with us since 1979, it is an agency whose role has been inexorably expanded by each legislature since. In its present (Or Laws 1983 cc. [sic] 826, 827) incarnation, the agency poses extremely troublesome

separation of powers issues that are much more complex and pervasive than any considered previously. They deserve a more vigorously analytical exposition than Awopish *Baxter.*"

Nothing in the legislation enacted since *Baxter* was decided, and nothing in plaintiffs' argument, persuade us that the issue plaintiffs raise should be decided differently now from the way we decided it in *Baxter.* If our discussion of the issue in *Baxter* was *dictum,* we now explicitly hold in accordance with it.

The word "Awopish" in plaintiffs' argument is presumably derived from "AWOP," an acronym of "affirmed without opinion." The meaning of plaintiffs' reference to AWOPs is somewhat obscure in its context, because plaintiffs also criticize at length the reasoning of our *opinion* in *Baxter.* However, we understand their point to be that, in their view, our opinion was not lengthy or probing enough.[5] After reviewing the arguments that plaintiffs offer to guide us in the more penetrating analysis they urge us to undertake, we conclude that *Baxter* requires no supplementation.

Affirmed.

---

[5] We note in passing that, after plaintiffs' counsel exhorts us in his opening brief to give the issue "more vigorous scrutiny than has yet been applied," he states:

"The author's recent circumstances (he has been too often in the garage and turned into a car) have rendered it impossible in this brief to outline the separation of powers issues in their deserved depth. With the indulgence of the court, plaintiffs will provide that elaboration, with specific reference to Oregon Laws 1983 cc. [sic] 826 and 827, in their reply brief."

We do not suggest that the scrutiny that proceeds that statement in the opening brief or that follows in the reply brief is less than vigorous.